IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. STAUDENMAIER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JUSTIN E. STAUDENMAIER, APPELLANT.

Filed June 29, 2021.    No. A-20-873.

Appeal from the District Court for Sioux County: TRAVIS P. O'GORMAN, Judge. Affirmed.

Andrew M. Pope, of Crites, Shaffer, Connealy, Watson, Patras & Watson, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

RIEDMANN, ARTERBURN, and WELCH, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Justin E. Staudenmaier appeals his sentence on his conviction for one count of terroristic threats, entered by the district court for Sioux County. On appeal, Staudenmaier alleges that the district court erred in denying his motion for new sentencing and that his sentence was excessive. We affirm.

## BACKGROUND

On September 12, 2019, Antonio Gutierrez was completing work on a fence in Sioux County, at the request of Staudenmaier's brother. While working on the fence, Gutierrez saw Staudenmaier driving his truck and heard two gunshots. Staudenmaier began driving toward Gutierrez, and Gutierrez testified that Staudenmaier was cursing and waving a shotgun at him. Gutierrez estimated that Staudenmaier pulled up within 7 feet of him, and while pulling up,

- 1 -

Staudenmaier had his gun out and pointed at him. At that point, Staudenmaier fired a shot into the front driver's side wheel well of Gutierrez' truck.

Gutierrez testified that Staudenmaier ordered him to "put [his] hands up" and "[g]et on the floor," although Staudenmaier's son testified no such orders were given. Gutierrez stayed on his feet and put his hands on the truck's tailgate. He testified that Staudenmaier continued "going off and cussing and pointing the gun" at him, and Gutierrez eventually said he was leaving, entered his truck, drove off, and called 911.

The same day, Sheriff Chad McCumbers received a call from 911 dispatch indicating that Gutierrez had been fired upon by a shotgun while building a fence. McCumbers met with Gutierrez, who appeared "highly agitated" and "very frightened." McCumbers observed a hole at the rear of the front driver's side wheel well of Gutierrez' truck, consistent with a shotgun blast. The hole appeared to be new, as there were no signs of corrosion, and there was powder residue around the hole.

In a subsequent interview between McCumbers and Staudenmaier, Staudenmaier admitted to pointing a firearm at Gutierrez, but stated he believed Gutierrez had been trespassing. Staudenmaier's son who was present during the incident, testified that he believed his father fired the weapon because Gutierrez was "[p]utting up a fence that shouldn't be there" and that the property on which the incident occurred belonged to Staudenmaier's parents at the time. Staudenmaier's son admitted, however, that Gutierrez told them he was constructing the fence at the request of Staudenmaier's brother.

Staudenmaier was charged with one count of terroristic threats, a Class IIIA felony. After a 1-day bench trial, the district court entered a verdict of guilty. A presentence investigation report (PSR) was prepared and forwarded to the court. Sentencing was originally scheduled for October 23, 2020, but was continued at the State's request to December 4. Staudenmaier was sentenced to 1 year's imprisonment and 9 months' postrelease supervision.

Staudenmaier filed a motion for new sentencing on December 7, 2020. He alleged that there was irregularity in the sentencing proceedings, the sentence was not sustained by sufficient evidence, and there was newly disclosed information not contained in the PSR. At the December 9 hearing on the motion, the court received two affidavits, one from Staudenmaier's nephrologist and one from his primary care physician. The affidavits set forth medical conditions from which Staudenmaier suffered, specifically End State Renal Disease which requires daily dialysis, and diabetes. His nephrologist opined that changing Staudenmaier's level of medical management would endanger his life.

Despite expressing frustration with the delayed medical information, the court determined that the evidence presented was not newly discovered because Staudenmaier knew the extent of his medical conditions and should have disclosed that information to the probation office. The court found that because it had already pronounced a sentence, such pronunciation could not be undone, and it denied the motion.

Staudenmaier timely appeals.

## ASSIGNMENTS OF ERROR

Renumbered and restated, Staudenmaier assigns that the district court (1) erred in denying his motion for new sentencing and (2) abused its discretion by imposing an excessive sentence.

STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason and evidence. *Id.*

ANALYSIS

*Motion for New Sentencing.*

Staudenmaier argues the district court erred in denying his motion for new sentencing. We disagree.

The Nebraska Supreme Court has clearly said that a sentence validly imposed takes effect from the time it is pronounced and that when a valid sentence has been put into execution, the trial court cannot modify, amend, or revise it in any way, either during or after the term or session of court at which the sentence was imposed. *State v. Schnabel*, 260 Neb. 618, 618 N.W.2d 699 (2000); *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified on denial of rehearing* 255 Neb. 889, 587 N.W.2d 673 (1999); *State v. Carlson*, 227 Neb. 503, 418 N.W.2d 561 (1988). See, also, *State v. Clark*, 17 Neb. App. 361, 762 N.W.2d 64 (2009).

Staudenmaier does not argue that the sentence imposed was invalid; rather, he argues that it was excessive given his medical conditions. An invalid sentence is one that is not authorized by the permissible statutory penalty for the crime and is beyond the sentencing court's power to pronounce. See *State v. Wilcox*, 239 Neb. 882, 479 N.W.2d 134 (1992). Because the sentence is within the statutory guidelines as set forth in the next section of this opinion, and the sentencing court had the power to pronounce it, we agree that the sentence was not invalid. Therefore, the court could not modify, amend, or revise it in any way.

Staudenmaier attempts to circumvent this rule by equating his motion for new sentencing to that of a motion for new trial under Neb. Rev. Stat. §§ 29-2101, 29-2102, and 29-2103 (Reissue 2016). We find this equivocation inaccurate. Chapter 29 of the Nebraska Revised Statutes addresses criminal procedures, and it contains no statute authorizing a "motion for new sentencing." See *State v. Melton*, 308 Neb. 159, 953 N.W.2d 246 (2021). Where a criminal procedure is not authorized by statute, it is unavailable to a defendant in a criminal proceeding. *Id*. As stated by the Supreme Court, "When a criminal defendant files a motion that is not authorized and therefore is unavailable under Nebraska criminal procedure, the motion is a procedural and legal nullity, and any court order adjudicating such a motion presents nothing for appellate review." *Id.* at 168, 953 N.W.2d at 253. Therefore, because a motion for new sentencing is not authorized under Nebraska criminal procedure, we question whether the sentencing court had a valid motion before it; regardless, we find no error in the decision to deny the motion.

*Excessive Sentence.*

Staudenmaier alleges that the district court abused its discretion by imposing an excessive sentence. He was convicted of one count of terroristic threats, a Class IIIA felony. Neb. Rev. Stat. § 28-311.01 (Reissue 2016). Class IIIA felonies are punishable by a maximum sentence of 3 years' imprisonment and 18 months' postrelease supervision with no minimum statutory sentence

required. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020). The district court sentenced Staudenmaier to 1 year's imprisonment and 9 months' postrelease supervision. Thus, because Staudenmaier's sentence lies within the statutory limit, we review it for an abuse of discretion.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Blaha*, *supra*. In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes a sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Staudenmaier argues the sentence imposed was excessive because the district court failed to adequately consider his age, mentality, education, experience, social and cultural background, and past criminal or law-abiding conduct.

The PSR indicated Staudenmaier was 49 years old at the time of sentencing, had graduated from high school, and was married with two adult children. The Level of Service/Case Management Inventory (LS/CMI) Staudenmaier completed indicated that his criminal history, education/employment, and family/marital status put him at a low risk of recidivism. He had a minimal past criminal history, only including 7 prior charges of issuing bad checks. Four of these prior charges had been dismissed, while Staudenmaier was required to pay fines and restitution on the other three. Staudenmaier has been receiving Social Security disability checks since July 2010, and he also earns money by raising and selling dogs. He reports having an excellent relationship with his parents, who live with Staudenmaier and his wife of 25 years. He claims to have positive relationships with his wife, son, and daughter. Staudenmaier stated that nobody in his family has a criminal history or issue with drug or alcohol abuse.

Staudenmaier's companions and alcohol/drug screenings indicate a very low risk for recidivism. He has two very close friends around his age and has never been involved in a gang. He denied ever using drugs and drinks alcohol only occasionally.

Staudenmaier's leisure/recreation, procriminal attitude/orientation and antisocial pattern screenings put him at a medium risk of recidivism. He reports interest in horses, rodeos, bronco riding, and horse sales, along with raising dogs. The PSR indicated he took minimal responsibility for the case at hand, as he indicated he believed he was the victim and believed he was defending his property by "doing what was right at the time." He did state, however, that he was disappointed in his actions and "tried to be the better person" after the offense. Staudenmaier reported that he normally does not act violently when he is upset. The Substance Abuse Questionnaire indicated that he is in the problem risk range for stress coping.

Staudenmaier also argues that the sentencing court failed to properly consider his health issue. The PSR indicates that Staudenmaier reported numerous medical issues, including diabetes, kidney failure, high blood pressure, an amputated leg, legal blindness, and depression. He takes medication for his depression and receives treatments for his vision problems. The PSR indicates

- 4 -

that Staudenmaier takes 21 different medications. Staudenmaier also reports financial issues due to his "staggering" medical bills. At sentencing, Staudenmaier's counsel highlighted that Staudenmaier had "serious health issues -- diabetes, kidney failure, he's suffered a leg amputation, and he's legally blind, and he's on medication for some of those issues."

At sentencing, the court made clear it had read and considered the contents of the PSR, as well as each of the required factors for sentencing under *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). The court detailed Staudenmaier's minimal criminal history, but noted the violence involved in the crime, the effect it had on Gutierrez, and the lack of responsibility demonstrated in the commission of the crime. The court also explained that any punishment less than incarceration would depreciate the seriousness of the crime and would promote disrespect for the law.

Therefore, because Staudenmaier's sentence was within the prescribed statutory limits and because the court considered all relevant sentencing factors as well as the contents of the PSR, we find no abuse of discretion.

## CONCLUSION

For the aforementioned reasons, we affirm the district court's sentence.

AFFIRMED.